UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY WILSON,<br><br>Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>Defendants. | Case No. 14-cv-01441-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS**<br><br>Re: Dkt. No. 22 |

The motion to dismiss the claim that the *Frozen* teaser trailer infringes upon Wilson's copyright in *The Snowman* is denied. Although Disney is correct that differences exist between the works (particularly with respect to pace and mood), their plot and sequence of events have too much in common for a court to conclude that "no reasonable juror could find substantial similarity of ideas and expression." *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)). Both works are animated shorts that depict the following sequence of events: (i) a snowman loses his carrot nose; (ii) the nose slides out to the middle of a frozen pond; (iii) the snowman is on one side of the pond and an animal who covets the nose is on the other; (iv) the characters engage in a contest to get to the nose first; (v) the screen pans back and forth from the snowman to the animal, set to music, as they endeavor to get to the nose; (vi) the contest continues when the snowman and the animal arrive at the nose at the same time; (vii) the animal ends up with the nose, leaving the snowman (and the viewer) to wonder if the snowman's nose will become food for the animal; and (viii) in the end, the animal returns the nose to the snowman. Such a detailed sequence of events from the start to the finish of the works could be found by a reasonable juror to constitute the artistic expression of an idea, rather than merely a generic idea or series of generic ideas. *See, e.g., L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841,

1    850-51 (9th Cir. 2012). The works share "the actual concrete elements that make up the total

2    sequence of events and the relationships between the major characters." *Funky Films*, 462 F.3d at

3    1077 (quoting *Berkic v. Crichton*, 761 F.2d 1289, 1293 (1985)).

4        That the works have this same essential sequence of events distinguishes them from the

5    works in *Funky Films*, the case on which Disney primarily relies. In *Funky Films*, the two works

6    began with the same premise – there is a struggling family-run funeral parlor, the patriarch of the

7    family dies unexpectedly, the estranged older son returns to visit immediately after the father's

8    death, the older son decides to stay and join the younger son to run the business and help turn it

9    around, and the older son quickly develops a romantic relationship upon his return home, which

10   becomes a significant element of the plot. But that was merely the premise, and from there the

11   two works fire off in very different directions. In *The Funk Parlor*, a screenplay, the older

12   brother's romantic interest is a woman who secretly murders people, and the murders benefit the

13   family funeral business. The older brother (John) and the woman (Sophia) get engaged, but John

14   has to kill Sophia in the end, upon discovering she intended him to be her next victim. In *Six Feet

15   Under*, a five-season television series, the older brother (Nate) and the woman (Brenda) do not try

16   to kill one another. As the Ninth Circuit explained, unlike *The Funk Parlor*, *Six Feet Under* was

17   not a murder mystery; rather it "explore[d] the intimate lives of each member of the Fisher family

18   by examining each character's complex psyche and his or her interpersonal interactions and

19   emotional attachments," developing "separate plot-lines around each member" of the family.

20   *Funky Films*, 462 F.3d at 1078.

21       Imagine a hypothetical *Six Feet Under* that is a three-hour movie instead of a five-season

22   television series. Imagine that Nate and Brenda have their liaison at the airport, a romantic

23   relationship ensues, Brenda starts killing people, she decides Nate should be her next victim, Nate

24   discovers this and gets her arrested, she goes to prison the rest of her life, and the movie ends.

25   There would still be differences between this hypothetical *Six Feet Under* and *The Funk Parlor*, of

26   course. For example, Sophia from *The Funk Parlor* might have looked very different from

27   Brenda. The sexual orientation of the younger brother in *The Funk Parlor* might have been

28   ambiguous, while David's in *Six Feet Under* was unmistakable. The mood might have been more

United States District Court
Northern District of California

dramatic in *The Funk Parlor* and more dour in *Six Feet Under*. In the hypothetical *Six Feet Under* (like the real one) Nate and Brenda didn't know each other before their liaison at the airport, while the older brother and Sophia knew each other since childhood and were neighbors. Nate got Brenda arrested; John killed Sophia. One takes place in Connecticut, the other Los Angeles. Despite these differences, "the actual concrete elements that make up the total sequence of events and the relationships between the major characters" would be so similar that the court would have to let it go to a jury. *Funky Films*, 462 F.3d at 1077.

      *The Snowman* and the *Frozen* teaser trailer have differences too. *The Snowman* is somewhat dour while the trailer is goofy. The animal seeking the carrot in *The Snowman* is a rabbit (who is a member of a family of rabbits). The animal seeking the carrot in the trailer is a reindeer (who looks more like a moose and acts more like a dog). The characters in *The Snowman* face a moral dilemma at the end of the short that does not exist in the trailer – namely, the snowman has to decide whether to risk his nose to save the rabbit from the icy pond, and the rabbit (who ends up with the nose) must decide whether to return the nose to his benefactor. One snowman's head flies off and the other's does not. One snowman utters the word "hello" and laughs a lot, while the other says nothing. But *The Snowman* and the teaser trailer nevertheless enjoy a parallelism comparable to that of *The Funk Parlor* and the hypothetical *Six Feet Under* movie. The sequence of events in both works, from start to finish, is too parallel to conclude that no reasonable juror could find the works substantially similar. This sequence of events does not merely represent a premise from which a story is launched; it a major part of the whole story in both works.

      The motion to dismiss the claim that the *Frozen* movie itself infringes upon Wilson's copyright in *The Snowman* is granted. The movie *Frozen* and *The Snowman* are not substantially similar. To the extent Wilson argues that a jury could find *Frozen* to infringe on her copyright in *The Snowman* based on similarities between the two snowmen, the Court disagrees:

3

 

Although these pictures lend some support to the conclusion that the works have a similar sequence of events (because the snowmen are venturing onto the ice in a similar fashion), it plainly contradicts Wilson's allegation that the snowmen themselves are similar. And to the extent Wilson argues *Frozen* could be found to infringe merely because it has a trailer that infringes, even though no scene from the trailer actually appears in the movie, she cites no authority for this counterintuitive proposition, and the Court is aware of none. This claim is dismissed with prejudice because, given the obvious and significant differences between *Frozen* and *The Snowman*, there is no conceivable factual allegation Wilson could add to her complaint to state a claim for infringement with respect to the movie.

Finally, the motion to dismiss the claim that "other trailers affiliated with *Frozen*" infringe upon Wilson's copyright in *The Snowman* is granted. The complaint does not identify these other trailers or allege which protected elements of *The Snowman* they copy. *See Capcom Co., Ltd. v. MKR Group, Inc.*, 2008 WL 4661479, at *4 (N.D. Cal. Oct. 20, 2008) ("To bring a copyright infringement []claim, [plaintiff] must assert ownership of a valid copyright, and the copying of constituent elements of the work that are original to it."). The dismissal is with leave to amend, but only to the extent the claim about these unidentified trailers is based on a theory other than the ones Wilson has posited for why the movie itself infringes.

**IT IS SO ORDERED.**

Dated: July 29, 2014

_____
VINCE CHHABRIA
United States District Judge

4