KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
ERIN J. COX (State Bar No. 267954)
erin.cox@mto.com
JORDAN D. SEGALL (State Bar No. 281102)
jordan.segall@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| KELLY WILSON,<br><br>    Plaintiff,<br><br>  vs.<br><br>THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., WALT DISNEY PICTURES, and WALT DISNEY MOTION PICTURES GROUP, INC.,<br><br>    Defendants. | Case No. 3:14-cv-01441-VC<br><br>**DECLARATION OF ERIN J. COX IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><br>Judge: Hon. Vince G. Chhabria<br>Date: April 9, 2015<br>Time: 10:00 a.m.<br>Ctrm: 4 |

1      I, Erin J. Cox, declare:

2      I am an attorney in the law firm of Munger, Tolles & Olson LLP, counsel of record for

3 Defendants The Walt Disney Company, Disney Enterprises, Inc., Walt Disney Pictures, and Walt

4 Disney Motion Pictures Group, Inc. (collectively, "Defendants") in the above-captioned action.  I

5 have personal knowledge of the facts stated in this declaration, and could testify to them

6 competently if called upon to do so.  I submit this declaration in support of Defendants' Motion

7 for Summary Judgment and Opposition to Plaintiff's Motion for Partial Summary Judgment.

8      1.      Attached hereto as **Exhibit 1** is a true and correct copy of excerpts from the

9 transcript of Plaintiff Kelly Wilson's deposition in this matter, taken on November 10, 2014, along

10 with the errata sheet to the transcript.

11      2.      Attached hereto as **Exhibit 2** is a true and correct copy of the Certificate of

12 Registration produced in discovery by Plaintiff in this matter, and marked as an exhibit during

13 Plaintiff's deposition.

14      3.      Attached hereto as **Exhibit 3** is a true and correct copy of an email dated October 4,

15 2011, addressed to Plaintiff from Pixar Recruiting, produced in discovery by Plaintiff in this

16 matter, and marked as an exhibit during Plaintiff's deposition.

17      4.      Attached hereto as **Exhibit 4** is a true and correct copy of a Gmail chat between

18 Plaintiff and Neil Wrischnik dated January 8, 2013, produced in discovery by Plaintiff in this

19 matter, and marked as an exhibit during Plaintiff's deposition.

20      5.      Attached hereto as **Exhibit 5** is a true and correct copy of Plaintiff's application

21 profile and uploaded resume from The Walt Disney Company's Vurv database for Requisition

22 177753, produced in discovery by Defendants in this matter, bearing Bates numbers

23 TWDC_00000016 through TWDC_00000023.

24      6.      Attached hereto as **Exhibit 6** is a true and correct copy of the Requisition Details

25 for Requisition 177753 from The Walt Disney Company's Vurv database, produced in discovery

26 by Defendants in this matter, bearing Bates numbers TWDC_00000014 through

27 TWDC_00000015.

28

7.      Attached hereto as **Exhibit 7** is a true and correct copy of an email dated January 23, 2014 from Neil Wrischnik at neil.wrischnik@gmail.com to Kelly Wilson at kellyannewilsn@gmail.com, along with attachments labeled "Disney Art Submission Form Completed (Dec. 2008.pdf" and "Disney Art Submission Form.pdf." These documents were produced in discovery by Plaintiff in this matter. The email was produced on a hard drive in the following folder structure: The Snowman Files\Emails\Misc\. The attachments to the email were produced on the same hard drive in the following folder structure: The Snowman Files\Emails\Misc\Attachments\2014.01.23. There were no other files located in this "attachments" subfolder.

8.      Attached hereto as **Exhibit 8** is a true and correct copy of a screenshot from a website that Plaintiff's attorney represents to be a "WayBack Machine Internet Archive" for kellywilsonfilms.com. (*See* Barteau Decl. ¶ 31.) I visited the URL address provided in the declaration of Plaintiff's attorney (https://web.archive.org/web/20100512184725/http://kellywilsonfilms.com), which appears to be an archived snapshot from May 12, 2010. I clicked on the still images of the Snowman, and the "WayBack Machine Internet Archive" loaded an archived webpage from October 6, 2013 that contains an embedded video of *The Snowman*, and lists six film festivals at which *The Snowman* was screened in 2011 and 2012. The archived webpage from October 6, 2013 in the screenshot at Exhibit 8 is directly accessible at https://web.archive.org/web/20131006233157/http://kellywilsonfilms.com/films_pages/snowman_Page.html.

9.      Attached hereto as **Exhibit 9** is a true and correct copy of excerpts from the transcript of Andrea Dundas's deposition in this matter, taken on January 16, 2015.

10.     Attached hereto as **Exhibit 10** is a true and correct copy of Plaintiff's application profile for Requisition 10384 from The Walt Disney Company's Kenexa database, produced in discovery by Defendants in this matter bearing Bates numbers TWDC_00000001 through TWDC_00000006. This document was marked as an exhibit during Ms. Dundas's deposition.

11.    Attached hereto as **Exhibit 11** is a true and correct copy of Plaintiff's application profile for Requisition 9243 from The Walt Disney Company's Kenexa database, produced in discovery by Defendants in this matter bearing Bates numbers TWDC_00000007 through TWDC_00000012.  This document was marked as an exhibit during Ms. Dundas's deposition.

12.    Attached hereto as **Exhibit 12** is a true and correct copy of the action log in Plaintiff's talent record from The Walt Disney Company's Kenexa database, produced in discovery by Defendants in this matter bearing Bates number TWDC_00000013.  This document was marked as an exhibit during Ms. Dundas's deposition.

13.    Attached hereto as **Exhibit 13** is a true and correct copy of the submission history in Plaintiff's talent record from The Walt Disney Company's Kenexa database, produced in discovery by Defendants in this matter bearing Bates number TWDC_00009405.  This document was marked as an exhibit during Ms. Dundas's deposition.

14.    Attached hereto as **Exhibit 14** is a true and correct copy of excerpts from the transcript of Edwin Fabian's deposition in this matter, taken on January 22, 2015, along with the errata sheet to the transcript.

15.    Attached hereto as **Exhibit 15** is a true and correct copy of Plaintiff's profile for from Pixar's Taleo database, produced by Pixar in response to a third-party subpoena in this matter, bearing Bates number PIXAR_00000001 through PIXAR_00000004.  The profile is not linked to any requisition.  This document was marked as an exhibit during Mr. Fabian's deposition.

16.    Attached hereto as **Exhibit 16** is a true and correct copy of email records linked to the profiles of Plaintiff and Neil Wrischnik in Pixar's Taleo database, produced by Pixar in response to a third-party subpoena in this matter, bearing Bates numbers PIXAR_00000015 through PIXAR_00000017.

17.    Attached hereto as **Exhibit 17** is a true and correct copy of excerpts from the transcript of Carlos Baena's deposition in this matter, taken on January 19, 2015.

18.    Attached hereto as **Exhibit 18** is a true and correct copy of an email dated May 1, 2011 from Grace Thompson to David Munier, with the subject line "Re: Play by Play – info on

1  Sunday morning screening," produced by Pixar in this matter bearing Bates number

2  PIXAR_00001186.

3       19.     Attached hereto as **Exhibit 19** is a true and correct copy of excerpts from the

4  transcript of Elyse Klaidman's deposition in this matter, taken on January 23, 2015.

5       20.     Attached hereto as **Exhibit 20** is a true and correct copy of excerpts from the

6  transcript of John Lasseter's deposition in this matter, taken on January 14, 2015.

7       21.     Attached hereto as **Exhibit 21** is a true and correct copy of an email dated January

8  4, 2012 from Chris Wiggum to various recipients, including Enrico Casarosa, with the subject line

9  "La Luna at the Santa Barbara Film Festival," produced by Pixar in this matter bearing Bates

10 number PIXAR_00002188.

11      22.     Attached hereto as **Exhibit 22** is a true and correct copy of a document produced

12 by Santa Barbara International Film Festival in response to a third-party subpoena from Plaintiff,

13 and sent to Defendants by Plaintiff's counsel on January 30, 2015.  The document lists screening

14 times for short films at the 2012 Santa Barbara International Film Festival.  It reflects that *La Luna*

15 was scheduled to screen on Thursday, January 26 at 8 p.m.

16      23.     Attached hereto as **Exhibit 23** is a true and correct copy of a document produced

17 by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

18 26(a)(1)(A)(ii) and labeled with the file name "Analytics - YouTube 1.9.13 to 1.14.13 views -

19 date.pdf."  This file was produced in a zip drive in the following folder structure: Kelly Wilson

20 Supplemental Production\YouTube.

21      24.     Attached hereto as **Exhibit 24** is a true and correct copy of a document produced

22 by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

23 26(a)(1)(A)(ii) and labeled with the file name "PJ6c7RLV8ew_2013-01-09-2013-01-

24 14_world_locations_1.csv."  This file was produced in a zip drive in the following folder

25 structure: Kelly Wilson Supplemental Production\YouTube\Analytics Excel 1.9.13 to 1.14.13.

26      25.     Attached hereto as **Exhibit 25** is a true and correct copy of a document produced

27 by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

28 26(a)(1)(A)(ii) and labeled with the file name "PJ6c7RLV8ew_2013-01-09-2013-01-

1    18_US_views_1.csv." This file was produced in a zip drive in the following folder structure:

2    Kelly Wilson Supplemental Production\YouTube\Analytics Excel 1.9.13 to 1.18.13.

3         26.    Attached hereto as **Exhibit 26** is a true and correct copy of an email dated January

4    10, 2013, at 9:31 p.m., from "YouTube Service" at noreply@youtube.com to Kelly Wilson at

5    kellyannewilsn@gmail.com, with the subject line "Neil Wrischnik sent you a video: 'The

6    Snowman.'" This document was produced in discovery by Plaintiff in this matter, labeled

7    "2013.01.10.pdf." The email was produced on a hard drive in the following folder structure: The

8    Snowman Files\Emails\Misc\.

9         27.    Attached hereto as **Exhibit 27** is a true and correct copy of a document produced

10   by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

11   26(a)(1)(A)(ii) and labeled with the file name "Analytics - YouTube 1.11.13 views.pdf." This file

12   was produced in a zip drive in the following folder structure: Kelly Wilson Supplemental

13   Production\YouTube.

14        28.    Attached hereto as **Exhibit 28** is a true and correct copy of a document produced

15   by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

16   26(a)(1)(A)(ii) and labeled with the file name "PJ6c7RLV8ew_2013-01-09-2013-01-

17   14_world_referrers_1.csv." This file was produced in a zip drive in the following folder structure:

18   Kelly Wilson Supplemental Production\YouTube\Analytics Excel 1.9.13 to 1.14.13.

19        29.    Attached hereto as **Exhibit 29** is a true and correct copy of a document produced

20   by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

21   26(a)(1)(A)(ii) and labeled with the file name "PJ6c7RLV8ew_2013-01-09-2013-01-

22   18_US_referrers_1.csv." This file was produced in a zip drive in the following folder structure:

23   Kelly Wilson Supplemental Production\YouTube\Analytics Excel 1.9.13 to 1.18.13.

24        30.    Attached hereto as **Exhibit 30** is a true and correct copy of a document produced

25   by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

26   26(a)(1)(A)(ii) and labeled with the file name "Analytics - YouTube 1.12.13 views.pdf." This file

27   was produced in a zip drive in the following folder structure: Kelly Wilson Supplemental

28   Production\YouTube.

DECL. OF ERIN J. COX
CASE NO. 3:14-CV-01441-VC

1        31.    Attached hereto as **Exhibit 31** is a true and correct copy of a document produced

2 by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

3 26(a)(1)(A)(ii) and labeled with the file name "PJ6c7RLV8ew_2013-01-09-2013-01-

4 31_US_referrers_1.csv."  This file was produced in a zip drive in the following folder structure:

5 Kelly Wilson Supplemental Production\YouTube\Analytics Excel 1.9.13 to 1.31.13.

6        32.    Attached hereto as **Exhibit 32** is a true and correct copy of a document produced

7 by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

8 26(a)(1)(A)(ii) and labeled with the file name "Analytics - YouTube 1.13.13 views.pdf."  This file

9 was produced in a zip drive in the following folder structure: Kelly Wilson Supplemental

10 Production\YouTube.

11        33.    Attached hereto as **Exhibit 33** is a true and correct copy of a document produced

12 by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

13 26(a)(1)(A)(ii) and labeled with the file name "Analytics - YouTube 1.9.13 to 1.14.13 views by

14 state.pdf."  This file was produced in a zip drive in the following folder structure: Kelly Wilson

15 Supplemental Production\YouTube.

16        34.    Attached hereto as **Exhibit 34** is a true and correct copy of a document produced

17 by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

18 26(a)(1)(A)(ii) and labeled with the file name "Analytics - YouTube views 1.10.13 to 2.3.13.pdf."

19 This file was produced in a zip drive in the following folder structure: Kelly Wilson Supplemental

20 Production\YouTube.

21        35.    Attached hereto as **Exhibit 35** is a true and correct copy of a document produced

22 by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

23 26(a)(1)(A)(ii) and labeled with the file name "Analytics - YouTube 1.9.13 to 1.31.13 views -

24 state.pdf."  This file was produced in a zip drive in the following folder structure: Kelly Wilson

25 Supplemental Production\YouTube.

26        36.    Attached hereto as **Exhibit 36** is a true and correct copy of a document produced

27 by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

28 26(a)(1)(A)(ii) and labeled with the file name "Geographical Statistics for The Snowman on

-6-

1   Vimeo Nov. 1 2012 to Jan. 1 2013.pdf." This file was produced in a zip drive in the following

2   folder structure: Kelly Wilson Supplemental Production\Vimeo.

3           37.     Attached hereto as **Exhibit 37** is a true and correct copy of a document produced

4   by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

5   26(a)(1)(A)(ii) and labeled with the file name "Total Statistics for The Snowman on Vimeo Jan. 1

6   2013 to Jan. 31 2013.pdf." This file was produced in a zip drive in the following folder structure:

7   Kelly Wilson Supplemental Production\Vimeo.

8           38.     Attached hereto as **Exhibit 38** is a true and correct copy of a document produced

9   by Plaintiff on January 30, 2015 as a supplement to Plaintiff's initial disclosures under Rule

10  26(a)(1)(A)(ii) and labeled with the file name "Geographical Statistics for The Snowman on

11  Vimeo Nov. 1 2012 to Jan. 31 2013.pdf." This file was produced in a zip drive in the following

12  folder structure: Kelly Wilson Supplemental Production\Vimeo.

13          39.     Attached hereto as **Exhibit 39** is a true and correct copy of a screenshots of

14  Facebook messages between Plaintiff and Dan Phillips, which was produced in discovery by

15  Plaintiff in this matter on November 25, 2014 as a document labeled "FB_DanPhillips.pdf." The

16  document was produced in a zip folder in the following folder structure: Kelly Wilson\Facebook.

17  A Facebook message conversation between Mr. Phillips and Plaintiff on January 8, 2013 begins

18  on page 3 of the document with Mr. Phillips's message at 9:24 a.m.

19          40.     Attached hereto as **Exhibit 40** is a true and correct copy of excerpts from a

20  document labeled "WallPostsMissed.pdf" produced in discovery by Plaintiff in this matter on

21  November 25, 2014. The document was produced in a zip folder in the following folder structure:

22  Kelly Wilson\Facebook\Wall_Photos. The excerpt attached as Exhibit 40 is a Facebook wall post

23  by Dan Phillips on January 8, 2013. The second page of the excerpt shows that the first comment

24  on the post was made at 10 a.m. on January 8, 2013, and that Mr. Phillips's post had "2 shares,"

25  meaning that two of Mr. Phillips's Facebook friends replicated his post on their own Facebook

26  walls.

27          41.     Attached hereto as **Exhibit 41** is a true and correct copy of excerpts from a

28  document labeled "WallPostsMissed.pdf" produced in discovery by Plaintiff in this matter on

-7-

November 25, 2014.  The document was produced in a zip folder in the following folder structure: Kelly Wilson\Facebook\Wall_Photos. The excerpt attached as Exhibit 41 is a Facebook wall post by Plaintiff on January 8, 2013.  The second page of the excerpt shows that the first comment on the post was made at 5:50 p.m. on January 8, 2013.  The first page of the excerpt shows that Plaintiff's post had "3 shares," meaning that three of Plaintiff's Facebook friends replicated her post on their own Facebook walls.

42.     Attached hereto as **Exhibit 42** is a true and correct copy of excerpts from a document labeled "WallPostsMissed.pdf" produced in discovery by Plaintiff in this matter on November 25, 2014.  The document was produced in a zip folder in the following folder structure: Kelly Wilson\Facebook\Wall_Photos.  The excerpt attached as Exhibit 42 is a Facebook wall post by "Kate Riordan via Kelly Wilson" on January 8, 2013.

43.     Attached hereto as **Exhibit 43** is a true and correct copy of excerpts from a document labeled "WallPostsMissed.pdf" produced in discovery by Plaintiff in this matter on November 25, 2014.  The document was produced in a zip folder in the following folder structure: Kelly Wilson\Facebook\Wall_Photos. The excerpt attached as Exhibit 43 is a Facebook wall post by "Cindy Muther via Kate Riordan" on January 9, 2013.

44.     Attached hereto as **Exhibit 44** is a true and correct copy of excerpts from the transcript of Paul Brigg's deposition in this matter, taken on January 20, 2015.

45.     Attached hereto as **Exhibit 45** is a true and correct copy of a set of storyboards for the *Frozen* teaser trailer entitled, "2013-01-19 FROZ Paul Teaser Pitch," produced in discovery by Defendants in this matter bearing Bates numbers WDP_00000061 through WDP_00000065.  This document was marked as an exhibit during Peter Del Vecho's deposition.

46.     Attached hereto as **Exhibit 46** is a true and correct copy of excerpts from the transcript of Chris Buck's deposition in this matter, taken on January 21, 2015.

47.     Attached hereto as **Exhibit 47** is a true and correct copy of a collection of emails dated June 18, 2013 produced in discovery by Defendants in this matter bearing Bates numbers WDP_00000139 through WDP_00000154.  This document was marked as an exhibit during Matt Roberts's deposition, and used as an exhibit during Mr. Buck's deposition.

48.     Attached hereto as **Exhibit 48** is a true and correct copy of excerpts from the transcript of Maureen Furniss's deposition in this matter, taken on February 27, 2015.

49.     Attached hereto as **Exhibit 49** is a true and correct copy of the Expert Report of Maureen Furniss in this matter, dated February 8, 2015, attached as Exhibit 1 to Plaintiff's Initial Expert Disclosure on Liability Issues.

50.     Attached hereto as **Exhibit 50** is a true and correct copy of the Expert Report of James McDonald in this matter, dated February 9, 2015.

51.     Attached hereto as **Exhibit 51** is a true and correct copy of the Rebuttal Report of James McDonald in this matter, dated February 17, 2015.

52.     Attached hereto as **Exhibit 52** is a true and correct copy of the court's order dismissing with prejudice the First Amended Complaint in *Hayes v. Minaj, et al.*, No. 2:12-cv-07972-SVW-SH, Dkt. 319 (C.D. Cal. Aug. 13, 2013).

53.     A review of the YouTube analytics produced by Plaintiff and attached as **Exhibits 23 through 25** (*see supra* ¶¶ 23-25) reveals the following about the traffic to *The Snowman* posting on January 10, 2013:

     a.     On January 10, the same date that Neil Wrischnik uploaded the video to YouTube, there were four viewings of *The Snowman*, and the average duration of the four viewings was 3 seconds.   (Ex. 23.)

     b.     All four viewings originated from the United States.  (Ex. 24.)

     c.     For one of the views, the user accessed the video through "/my_videos_edit"—meaning that Mr. Wrischnik, who posted *The Snowman* to YouTube using his personal YouTube account, was responsible for this activity. (Ex. 24.)

     d.     Because all four viewings were attributable to a single unique user, (Ex. 25), Mr. Wrischnik was the only person who accessed *The Snowman* on YouTube on January 10.

     e.     Mr. Wrischnik shared his YouTube posting with Plaintiff via an email generated through YouTube at 9:31 p.m. on January 10.  (*See supra* ¶ 26, Ex. 26.)

54.     A review of the YouTube analytics produced by Plaintiff and attached as **Exhibits 25, and 27 through 29** (*see supra* ¶¶ 25, 27-29) reveals the following about the traffic to *The Snowman* posting on January 11, 2013:

a.     On January 11, there were six viewings of *The Snowman* on YouTube—one from Texas and five from California.  (Ex. 27.)

b.     There were two unique users who accessed *The Snowman* on January 11. (Ex. 25.)  Since there was one viewer located in Texas, all five of the views in California were attributable to a single person. (Ex. 27.)

c.     Three unique viewers had accessed *The Snowman* in the previous seven days, meaning that the California viewer on January 11 was not Mr. Wrischnik, who had been the only viewer from the day prior.  (Ex. 25.)

d.     On average, the single California user from January 11 watched 1 minute and 19 seconds of *The Snowman*.  (Ex. 27.)

e.     This single viewer from California on January 11 did not locate the posting through a search, but rather through "NO_LINK_OTHER."   (Exs. 28-29.)

f.     According to the explanatory instructions provided by Google relating to data and analytics that a YouTube user can generate for their posted videos, the type of report produced by Plaintiff and attached as Exhibits 28 and 29 "describes the manner in which users reached the video." The source type of "NO_LINK_OTHER" "encompasses direct traffic to a video as well as traffic on mobile apps."  *See* https://developers.google.com/youtube/analytics/v1/dimsmets/dims.

g.     Based on the foregoing, one of the three unique viewers who had viewed the posting since its upload was Mr. Wrischnik (*supra* ¶ 53); and one was the viewer from Texas (*supra* ¶ 54(a)).  The third viewer did not navigate to the page as the result of a search. (*Supra* ¶ 54(e)).   Mr. Wrischnik had shared the link to the posting with Plaintiff through his YouTube email the night before, and as indicated above, Plaintiff had not viewed *The Snowman* on YouTube prior to receiving that link. (Ex. 25; *supra* ¶ 53(d)-(e).)  If Plaintiff clicked on the link forwarded by Mr. Wrischnik, then she would have viewed the video as a result of

-10-

1    "NO_LINK_OTHER," and therefore would be the third person to have viewed the posting as of

2    January 11.

3           55.     A review of the YouTube analytics produced by Plaintiff and attached as **Exhibits**

4    **25, and 30 through 31** (*see supra* ¶¶ 25, 30-31) reveals the following about the traffic to *The*

5    *Snowman* posting on January 12, 2013:

6                   a.    On January 12, one person from California accessed the video.  (Ex. 30.)

7                   b.    The duration of this single viewing was 0 seconds. (Ex. 30.)

8                   c.    There was one other viewing in the U.S. on this date from an "unknown

9    region." (Ex. 30.)

10                  d.    The number of unique viewers from the United States in the preceding

11   seven days was four, one more than the day prior (January 11).  Because all previous viewers were

12   located in identifiable regions (California or Texas), the user on January 12 from an "unknown

13   region" was necessarily the "new" unique visitor for the week who had yet to access the video.

14   (Ex. 25.)  Thus, the California viewer on January 12 was someone who had accessed the video

15   from California previously, which was either Mr. Wrischnik (from January 10) or Plaintiff

16   (assuming, as indicated above, that she was the "NO_LINK_OTHER" viewer from January 11).

17                  e.    One of the viewers from the United States on January 12 navigated to *The*

18   *Snowman* by searching for "snowman and rabbit," and then viewed the video once; the other

19   viewer accessed the video once through "NO_LINK_OTHER."   (Ex. 31.)

20                  f.    The length of the viewing by the user from the "unknown region" was 56

21   seconds. (Ex. 30.)

22          56.     A review of the YouTube analytics produced by Plaintiff and attached as **Exhibits**

23   **25, 28, and 32** (*see supra* ¶¶ 25, 28, 32) reveals the following about the traffic to *The Snowman*

24   posting on January 13, 2013:

25                  a.    On January 13, one person from California accessed the video.  (Ex. 32.)

26                  b.    The length of the viewing was 9 seconds.  (Ex. 32.)

27                  c.    This California viewer accessed the video not through a search, but through

28   "NO_LINK_OTHER."  (Ex. 28.)

d.      The number of unique users from the United States in the preceding seven days was four—unchanged from January 12.  (Ex. 25.)  The California viewer who accessed the video through "NO_LINK_OTHER" on January 13, therefore, had viewed the posting previously.

57.      A review of the YouTube analytics produced by Plaintiff and attached as **Exhibits 25 and 33** (*see supra* ¶¶ 25, 33) reveals the following about the traffic to *The Snowman* posting on January 14, 2013:  No one in the United States accessed *The Snowman* on YouTube.

58.      A review of the YouTube analytics produced by Plaintiff and attached as **Exhibits 29 and 34** (*see supra* ¶¶ 29, 34) reveals the following about the traffic to *The Snowman* posting on January 15, 2013:

a.      One person accessed *The Snowman* posting on January 15.  (Ex. 34.)

b.      That one person was from the United States, and navigated to the video by searching for "snowman cartoons for children." (Ex. 29.)

c.      Plaintiff produced the daily view log broken down by U.S. states for January 11, 12, and 13 as a supplement to her initial disclosures on the day discovery closed, January 30, 2015.  (*See* Exs. 27, 30, 32.)   Plaintiff did not produce as part of this supplement the daily view log for January 15.

d.      Based on the information that Plaintiff did produce, however, the following is known about the person who accessed the posting on January 15:

i.      The length of that person's viewing on January 15 was 1 minute and 10 seconds. (Ex. 34.)

ii.      There were a total of 13 viewings from California for the month ending January 31.  (Ex. 35.)  Through January 14, there were 11 viewings from California.  (Ex. 33.)  Hence, between January 15 and 31, there were only two instances in which *The Snowman* was viewed from California.

iii.      The average duration of the two California viewings that occurred between January 15 and January 31 was 8 seconds.  This is ascertainable as follows:  Through January 14, an aggregate 374 seconds of the video had been viewed from California.  (Ex. 33.)  By the end of the month, 390 seconds of the video had been viewed from California for the entire

-12-

1    month.  (Ex. 33.)  Based on those numbers, the total duration of viewings from California between

2    January 15 and January 31 was 16 seconds.

3               e.      If a California user had accessed *The Snowman* on January 15, the viewing

4    would have lasted, at most, 16 seconds.  However, the January 15 viewing originating in the

5    United States lasted for 1 minute and 10 seconds. (Ex. 34.)  The user on January 15 who navigated

6    to the video by searching for "snowman cartoons for children," therefore, could not have been

7    from California.

8        59.    A review of the YouTube analytics produced by Plaintiff and attached as **Exhibits**

9    **25, and 33 through 35** (*see supra* ¶¶ 25, 33-35) reveals the following about the traffic to *The*

10   *Snowman* posting between January 16 and January 19, 2013:

11              a.      No one accessed *The Snowman* on YouTube on January 16.  (Ex. 34.)

12              b.      No one accessed *The Snowman* on YouTube on January 17.  (Ex. 34.)

13              c.      One person accessed *The Snowman* on YouTube on January 18.  (Ex. 34.)

14   The length of this single viewing was 30 seconds.  (Ex. 34.)   Although the user was located in the

15   United States (Ex. 25), it could not have been a California user in light of the length of the viewing

16   (more than the maximum 16 seconds that a single California viewer may have watched).

17              d.      No one accessed *The Snowman* on YouTube on January 19.  (Ex. 34.)

18       60.    Plaintiff deposed Peter Del Vecho, the producer of *Frozen*, on October 28, 2014 on

19   numerous Rule 30(b)(6) topics relating to the conception, development, and production of the

20   *Frozen* teaser trailer.  In advance of the deposition, Defendants produced 40 pages of

21   brainstorming meeting minutes and production notes covering a three-month period, from January

22   7, 2013 through April 18, 2013, and 83 pages of storyboards.

23       61.    In total, Defendants produced more than 72,000 pages of documents collected from

24   46 custodians likely to have responsive material, and from a central repository at Walt Disney

25   Animation Studios where materials relating to the teaser trailer reside.  Defendants' productions

26   included gigabytes of video and animation files memorializing 33 working versions of the teaser

27   trailer over the course of its development.

28

-13-

62.     Following the February 5, 2015 telephone conference with the Court, the parties resolved Plaintiff's anticipated motion to compel further production from Pixar in response to a third-party subpoena through an agreement that Pixar would collect documents from Pixar employees who may have attended the 2011 San Francisco International Film Festival (based on documents produced by Carlos Baena at his deposition) or the 2012 Santa Barbara Film Festival (based on documents produced by the Santa Barbara International Film Festival in response to Plaintiff's third-party subpoena), and to search for documents concerning Plaintiff, Mr. Wrischnik, the festivals, or the online postings of *The Snowman*.

63.     Defendants produced all documents relating to job applications submitted by Plaintiff and Mr. Wrischnik found within their recruiting databases.  On November 17, 2014, Plaintiff deposed Matt Roberts, a recruiter for Walt Disney Animation Studios, on Rule 30(b)(6) topics relating to recruiting, the processing of applications, and any applications by Plaintiff or Mr. Wrischnik.  Mr. Roberts was the recruiter who had originally evaluated the animation reels uploaded by Mr. Wrischnik to his application profiles with Walt Disney Animation Studios. Plaintiff deposed Andrea Dundas, the director of talent acquisition for The Walt Disney Company, on the same Rule 30(b)(6) topics on January 16, 2015. On January 22, 2015, Plaintiff deposed Edwin Fabian, a human resources analyst at Pixar, about the job-application and recruitment systems there and about Plaintiff's and Mr. Wrischnik's applications.

64.     Plaintiffs also deposed Carlos Baena, Paul Briggs, Chris Buck, Elyse Klaidman, and John Lasseter. Plaintiff noticed—and then withdrew notices for—the depositions of David Munier, Bob Roden, and David Sameth.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration was executed on March 12, 2015, at Los Angeles, California.

*/s/ Erin J. Cox*
_____
ERIN J. COX[1]

_____

[1] Electronically signed by Kelly M. Klaus with the concurrence of Erin J. Cox. Civ. L.R. 5-1(i)(3).

-15-